# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| PERI & SONS FARMS, INC., *et al.*,<br><br>    *Plaintiffs*,<br>v.<br>R. ALEXANDER ACOSTA, *et al.*,<br><br>    *Defendants*. | Civil Action No. 19-34 (TJK) |

## MEMORANDUM OPINION

This case is about the H-2A temporary agricultural labor program, which permits agricultural employers that face a shortage of domestic workers to meet their labor needs by hiring foreign workers on a temporary or seasonal basis ("H-2A workers"). To ensure that the employment of temporary foreign workers under this program does not adversely affect the wages of similarly employed domestic workers, the Department of Labor (the "Department") must publish an annual notice setting forth the next year's Adverse Effect Wage Rates (AEWRs). AEWRs set a wage floor that employers participating in the H-2A program must pay to all agricultural workers.

Peri & Sons Farms, Inc., and the National Council of Agricultural Employers (NCAE) (collectively, "Plaintiffs") have sued the Secretary of Labor and two Department officials ("Defendants"), alleging that the Department violated the Administrative Procedure Act (APA) in two ways. First, Plaintiffs contend that the Department lacked statutory authority to promulgate AEWRs without first making a finding on whether the employment of H-2A workers adversely effected the wages of domestic agricultural workers. Second, Plaintiffs allege that the Department acted arbitrarily and capriciously when it disregarded certain factors, such as

differences in workers' geographic area, occupation, skills, and experience, in assessing any such adverse effect.

Before the Court is Plaintiffs' motion for a preliminary injunction. The parties have agreed to consolidate that motion with the merits, and to allow the Court to rule on the merits based on the current briefing and record. Defendants argue in their opposition that the Court does not have subject-matter jurisdiction over Plaintiffs' claims. As explained in more detail below, the Court agrees. Plaintiffs' claims present challenges to the 2010 regulation that established the methodology for determining AEWRs. Thus, because they fall outside the statute of limitations set forth in 5 U.S.C. § 2401(a), and because Plaintiffs have not shown that a narrow exception to that statute applies, the Court must dismiss the case for lack of subject-matter jurisdiction.[1]

## I. Background

### A. Statutory and Regulatory Background

The H-2A visa program was created by the Immigration and Nationality Act of 1952 (INA) and amended by the Immigration Reform and Control Act of 1986. 8 U.S.C. § 1101 *et seq*. Under the program, employers seeking to hire H-2A workers must first receive certification

---

[1] In reaching its conclusion, the Court considered all relevant filings including, but not limited to, the following: Plaintiffs' Complaint, ECF No. 1 ("Compl."); Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 2 ("Pls.' Mot."); Plaintiffs' Memorandum in Support of Their Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 3; Defendant-Intervenor United Farm Workers' Motion to Intervene, ECF No. 11 ("1st Mot. to Intv."); Plaintiffs' Supplemental Memorandum in Support of Their Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 14 ("Pls.' Supp. PI Br."); Defendant-Intervenors Michael Cortez, Arnoldo Charles, and Olegario Lopez's Motion to Intervene, ECF No. 15 ("2d Mot. to Intv."); Plaintiffs' Opposition to Defendant-Intervenors' Motions to Intervene, ECF No. 26; Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 27 ("Dfs.' Opp."); Defendant-Intervenors' Reply in Support of Their Motions to Intervene, ECF No. 29; Plaintiffs' Reply in Support of Their Motion for Preliminary Injunction, ECF No. 31 ("Pls.' Reply"); and Defendant-Intervenors' Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 32.

from the Department that (1) there are insufficient domestic workers available to perform the needed labor or services and (2) the employment of the H-2A workers "will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1). To meet the second requirement, the Department sets annual AEWRs—wage floors for workers employed by an H-2A participating employer. 20 C.F.R. § 655.120. The stated purpose of the AEWR is "to neutralize any 'adverse effect' resultant from the influx of temporary foreign workers." *See* Labor Certification Process for the Temporary Employment of Aliens in Agriculture and Logging in the United States, 52 Fed. Reg. 20496-01, 20502 (June 1, 1987) (quoting *Williams v. Usery*, 531 F.2d 305, 306 (5th Cir. 1976)).

The Department last updated the methodology by which it calculates AEWRs through notice-and-comment rulemaking in February 2010. *See* Temporary Agricultural Employment of H-2A Aliens in the United States; Final Rule, 75 Fed. Reg. 6884 (Feb. 12, 2010) ("2010 Rule"). Under the 2010 Rule, the Department determined that AEWRs are to be set at the "annual weighted average hourly wage for field and livestock workers," depending on the relevant state or region, based on the Department of Agriculture's "quarterly wage survey" ("USDA Average Wage"). 29 C.F.R. § 655.103(b). In accordance with § 655.120(c), the Department publishes annual notices in the Federal Register setting forth the upcoming year's AEWRs for each state. The Department published the AEWRs for 2019 through a notice in the Federal Register on December 26, 2018 ("2019 AEWR Notice"). *See* 83 Fed. Reg. 66306-01 (Dec. 26, 2018). On January 9, 2019, it went into effect. *Id.*

    **B.**    **The Parties**

Peri & Sons is a farming operation with about 15,000 acres in and around Yerington, Nevada, where it grows onions and leafy greens. Compl., Ex. 4 ¶ 3. Peri & Sons participates in the H-2A program to meet its need for agricultural laborers. *Id.*, Ex 4 ¶ 5. During its growing

3

season in 2018, Peri & Sons employed 1,768 H-2A workers. *Id.*, Ex. 4 ¶ 6. When Peri & Sons filed its complaint, it employed 240 H-2A workers. *Id.*, Ex. 4 ¶ 7. As an H-2A participating employer, Peri & Sons is subject to the 2019 AEWR Notice, which set the 2019 AEWR for Nevada at $13.13 per hour. *Id.*, Ex. 4 ¶ 13. This rate for Nevada represented a 23% increase above the 2018 AEWR of $10.69 per hour. *Id.*, Ex. 4 ¶¶ 10, 13. And in compliance with H-2A regulations, Peri & Sons pays additional expenses for its H-2A workers, including transportation and subsistence costs, as well as the cost of housing for the workers. *Id.*, Ex. 4 ¶ 12. Peri & Sons estimates that the costs of housing and transportation for its H-2A workers adds $2.15 in costs for each hour worked, which, it asserts, "translates to an effective hourly wage of $15.28 per hour" for 2019. *Id.*, Ex. 4 ¶¶ 12–13. By its own estimations, Peri & Sons predicts that the 2019 AEWR will cause its labor costs to increase from approximately $45 million to $49 million, which will cause it to experience a net loss of around $3 million, compared to receiving net profits of $974,755 in 2018. Pls.' Supp. PI Br., Ex. 1 ¶ 7.

NCAE is a national association founded in 1964 that represents the interests of agricultural employers before Congress and federal agencies, with an exclusive focus on labor issues. Compl., Ex. 5 ¶ 3. NCAE's membership comprises around 85% of all employers in the United States that participate in the H-2A program. *Id.*, Ex. 5 ¶ 4. At the peak of growing season, NCAE's members employ about 204,000 H-2A workers. *Id.*, Ex. 5 ¶ 6. NCAE brings its claims on behalf of its H-2A participating employers and the H-2A participating employers of its member associations. *Id.* Ex. 5 ¶ 9. Those employers, NCAE contends, face millions of dollars in increased labor costs because of the 2019 AEWRs, which will threaten the viability of some of its member farms. *Id.*, Ex. 5 ¶ 14. For example, Cedar Farms in Idaho—an NCAE member participating in the H-2A program—declared that the 2019 AEWR increase is

4

"catastrophic" to its operations and threatens the "sustainability and continued longevity" of the company. Pls.' Supp. PI Br., Ex. 7 ¶ 8. Similarly, Petrocco Farms in Colorado contends that the 2019 AEWR increase will cause it to "suffer significant harm" and lead to "unsustainable" losses that will force it "to cease operations." *Id.*, Ex. 3.

United Farm Workers (UFW), which joined this action as a Defendant-Intervenor, is the largest farmworkers' union in the United States with a membership of over 9,000 in 2018, including both domestic and H-2A workers. 1st Mot. to Intv., Romero Decl. ¶¶ 2, 6. UFW is headquartered in California and represents farmworkers in over 30 states. *Id.*, Romero Decl. ¶¶ 3, 4. UFW seeks to protect the rights and interests of farmworkers by advocating for higher wages and greater workplace safety protections. *Id.*, Romero Decl. ¶ 5. UFW contends that the enjoinment of the 2019 AEWRs would harm its members, many of whom would be paid at lower wage rates and would face difficulty recovering earned backpay if the 2019 AEWRs were to be reinstated at a later date. *Id.*, Romero Decl. ¶¶ 11–13.

Three individual farmworkers also joined this action as Defendant-Intervenors. Arnoldo Charles is an experienced farmworker and U.S. citizen who has worked at farms in Ohio, Indiana, and Mississippi from 2009 through 2015. 2d Mot. to Intv., Ex. 1 ¶ 5. When he moved to intervene, Charles was prepared to accept seasonal agricultural work in Ohio and Indiana over the course of 2019. *Id.*, Ex. 1 ¶ 7. Olegario Lopez is also an experienced farmworker and a lawful permanent resident of the U.S. who has performed agricultural work in Illinois, Michigan, Nebraska, and the southeastern U.S. since 2001. *Id.*, Ex. 2 ¶¶ 4, 5. When he moved to intervene, Lopez planned to perform agricultural work in Illinois and in the southeastern U.S. in 2019. *Id.*, Ex. 2 ¶¶ 5, 10. Michael Cortez is a U.S. citizen residing in Harlingen, Texas. *Id.*, Ex. 3 ¶¶ 2, 3. He plans to seek agricultural work in 2019 with an H-2A employer in Texas. *Id.*, Ex. 3 ¶ 10. All

three individual intervenors assert an interest in preventing the enjoinment of the 2019 AEWRs because of the higher wages they expect to be paid under those rates. *Id.*, Ex. 1 ¶ 8; *id.*, Ex. 2 ¶ 11; *id.*, Ex. 3 ¶ 10.

### C. Procedural Background

On January 7, 2019, Plaintiffs filed their complaint, as well as a motion for a temporary restraining order and preliminary injunction. Plaintiffs bring two counts under the APA. Compl. ¶¶ 39–46. First, Plaintiffs allege that in setting the 2019 AEWRs, Defendants acted "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations" by increasing the rates without finding that the use of H-2A workers had an "adverse effect" on the wages of U.S. workers. *Id.* ¶¶ 39–42 (quoting 5 U.S.C. § 706(2)). Second, Plaintiffs allege that Defendants acted arbitrarily and capriciously when it did not assess any potential "adverse effect" without considering "differences in geographic areas, occupation, skills, or experience" or the additional costs of H-2A employment, such as housing and transportation for H-2A workers. *Id.* ¶¶ 43–46. Plaintiffs' motion sought relief in the form of a temporary restraining order and preliminary injunction that would enjoin Defendants from (1) implementing the 2019 AEWR Notice; (2) issuing any further notices without including "a finding of actual 'adverse effect' or that do not consider geographic areas, occupation, skills, or experience;" (3) and enforcing the 2019 AEWRs against any H-2A employer. *Id.* ¶ 46; *see* Pls.' Mot. at 4–5.

On January 8, 2019, the Court held a telephonic hearing on Plaintiffs' motion for a temporary restraining order. The Court denied that motion because Plaintiffs had not shown that they faced imminent and irreparable harm between that time and when Plaintiffs' motion for preliminary injunction could be resolved. *See* Docket, Civ. No. 19-34 (January 9, 2019 Order). On January 9 and 15, respectively, UFW and Michael Cortez, Arnoldo Charles, and Olegario Lopez filed motions to intervene as Defendants. 1st Mot. to Intv.; 2d Mot. to Intv. On January

6

14, Plaintiffs filed a supplemental memorandum and declarations in support of their motion for preliminary injunction. Pls.' Supp. PI Br. On January 23, Defendants filed their opposition, and on January 25, Plaintiffs filed their reply.

On January 28, 2019, the Court held a hearing on Plaintiffs' motion for preliminary injunction, during which it granted both motions to intervene.[2] The Defendant-Intervenors' opposition briefs were docketed the next day. On February 1, 2019, the parties represented in a joint status report that they had no objection to the Court consolidating the motion for preliminary injunction with the merits of this case under Federal Rule of Civil Procedure 65(a)(2) and deciding the merits on the briefing and argument then in the record. *See* ECF No. 33.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *P & V Enters. v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 2d 134, 139 (D.D.C. 2006) (quoting *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006)), *aff'd*, 516 F.3d 1021 (D.C. Cir. 2008). In considering subject-matter jurisdiction, the Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Id.* (quoting *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005)). In so doing, "a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true." *W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 133 (D.D.C. 2008) (citing *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005)). And if the Court "concludes that it lacks subject-

---

[2] Citations to the hearing transcript are to pages in a "rough" version provided by the court reporter, since the final transcript is not yet available.

matter jurisdiction, [it] must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

## III. Analysis

Plaintiffs bring their two claims under § 706(2)(A) of the APA, and thus both are subject to the statute of limitations set forth in 28 U.S.C. § 2401(a). *See Mendoza v. Perez*, 754 F.3d 1002, 1018–19 (D.C. Cir. 2014). Because these claims fall outside this statute of limitations, and because Plaintiffs have not shown that they fall within a narrow exception to it, the Court must dismiss the case for lack of subject-matter jurisdiction.

### A. Plaintiffs' Claims Accrued in 2010 and Are Therefore Barred By the Statute of Limitations

Under 28 U.S.C. § 2401(a), a "civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." A "'right of action first accrues on the date of the final agency action,' and promulgation of a rule is 'unquestionably final agency action.'" *Koi Nation of N. Cal. v. U.S. Dep't of Interior*, No. 17-cv-1718 (BAH), 2019 WL 250670, at *14 (D.D.C. Jan. 16, 2019) (quoting *Wash. All. of Tech Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 342 (D.C. Cir. 2018)). "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987); *see also Wash. All. of Tech Workers*, 892 F.3d at 345 n.4 ("Section 2401(a) 'is a jurisdictional condition attached to the government's waiver of sovereign immunity.'" (quoting *Spannaus*, 824 F.2d at 55)).

Plaintiffs purport to challenge the 2019 AEWR Notice. Compl. ¶¶ 41, 45. But Defendants assert that Plaintiffs' claims accrued when the Department promulgated the 2010 Rule. Thus, Defendants argue, they must be dismissed because they are barred by the statute of

8

limitations. As explained below, the Court agrees that Plaintiffs' claims accrued almost a decade ago.

In Count I, Plaintiffs allege that the Department exceeded its statutory authority when it failed to "measure for [or] make specific findings as to the existence of an 'adverse effect'" on the wages of similarly employed domestic workers when promulgating annual AEWRs. Compl. ¶¶ 3, 39–42. In other words, Plaintiffs allege that by issuing the 2019 AEWR Notice, the Department "impose[d] significantly higher labor costs . . . without acting in accordance with the INA's requirement to find adverse effect and beyond the authority provided to it by Congress with respect to setting the terms and conditions of H-2A employment." *Id.* ¶ 41. The problem for Plaintiffs is that the Department determined *in 2010* that it did not need to make findings about or measure any potential adverse effect when setting annual AEWRs.

In fact, at that time, the Department set forth an extensive justification of its methodology for determining the annual AEWRs. *See* 75 Fed. Reg. at 6891–93. As part of that justification, the Department concluded that "evidence of current wage depression [was] not needed" to set annual AEWRs. *Id.* at 6893 (edits to capitalization). The Department explained that, even without a finding that the employment of H-2A workers created an adverse effect on domestic wages, the use of AEWRs was necessary "in order to effectuate its statutory mandate of protecting domestic agricultural workers from the *possibility* of adverse effects on their wages." *Id.* at 6895 (emphasis added). Because AEWRs represented "wage floor[s]" that addressed "the forward-looking need to protect U.S. workers [from] wage stagnation or deflation that has the potential to result from the hiring of immigrant labor," the Department concluded that it could circulate AEWRs without finding actual "evidence of wage depression in agriculture." *Id.* at 6891–93. The Department codified how AEWRs are calculated a month later, in March 2010,

when it defined the AEWR as "[t]he annual weighted average hourly wage for field and livestock workers (combined) in the States or regions as published annually by the U.S. Department of Agriculture (USDA) based on its quarterly wage survey." 20 C.F.R. § 655.103(b). Thus, the Department decided in 2010 whether it needed to "measure for [or] make specific findings" as to the existence of any adverse effect when setting AEWRs. Compl. ¶ 3. In contrast, the 2019 AEWR Notice merely "announce[d] the annual update of the AEWRs" in accordance with the methodology established in the 2010 Rule.[3] 83 Fed. Reg. 66306-01.

In Count II, Plaintiffs allege that the 2019 AEWR Notice was arbitrary and capricious. Compl. ¶¶ 43–45. They assert that any assessment of "adverse effect" must consider "differences in geographic areas, occupation, skills, or experience" across the agricultural labor market as well as the "additional Department-mandated costs of H-2A employment above and beyond the required AEWR," such as housing and transportation for temporary workers. *Id.* ¶ 44. But again, the Department determined in 2010 that it did not need to assess any potential adverse effect on the wages of similarly employed domestic workers when setting annual AEWRs. And not surprisingly, the 2019 AEWR Notice never mentions how any potential adverse effect should be appraised.[4]

---

[3] Although Plaintiffs do not so assert, the Court notes that the 2019 AEWR Notice did not restart the statute of limitations under the "renewal doctrine" because it did not "enact a substantive change" to the 2010 Rule. *Mendoza v. Perez*, 754 F.3d 1002, 1018–19 (D.C. Cir. 2014) (citing *Impro Prods., Inc. v. Block*, 722 F.2d 845, 850 & n.9 (D.C. Cir. 1983)). Nor do Plaintiffs argue, much less demonstrate, that Defendants "reopened" the 2010 Rule for comment. *See Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 150 (D.C. Cir. 1990).

[4] To the extent that Count II asserts that the Department unlawfully failed to consider these factors *as part of the AEWR methodology itself,* such a claim would also have accrued in 2010. In fact, when it established the current AEWR methodology, the Department responded to comments from "farm organizations and individual farmers" that specifically questioned whether the methodology would adequately consider "data by skill level or experience, occupations, or

For these reasons, Plaintiffs' claims first accrued, at the latest, on March 15, 2010—the date the 2010 Rule was codified, 20 C.F.R. § 655.103(b)—and the statute of limitations expired on those claims on March 15, 2016. Plaintiffs did not bring this lawsuit until January 7, 2019. As a result, their claims must be dismissed.[5]

Judge Bates reached the same conclusion in a highly similar circumstance in *Alaska Community Action on Toxics v. EPA*, 943 F. Supp. 2d 96 (D.D.C. 2013). In that case, the Environmental Protection Agency (EPA) had to publish a "product schedule" listing dispersants used to clean up oil spills, as well as the quantities of those dispersants and the waters in which they could be used safely. *Id.* at 98. EPA promulgated a rule that explained its decision not to list the quantities and waters because, at least in its view, the wide variability in conditions required "a flexible approach." *Id.* at 99. EPA did, though, periodically publish a schedule that

---

geographic locales of workers" when setting annual AEWRs. 75 Fed. Reg. at 6899. Similarly, the Department considered comments in that rulemaking related to its imposition of other expenses on H-2A employers, including housing and transportation for temporary workers. *See id.* at 6908–12.

[5] Plaintiffs also argue that several member farms of NCAE, including farms that filed declarations attached to their motion, "are newcomers to the H-2A program" and therefore their claims could not have accrued in 2010, before they decided to participate in the program. Pls.' Reply at 4. But as the D.C. Circuit has made clear, there is a "six-year window to directly challenge the statutory authority" of a regulation, which "accrues on the date of the final agency action." *Wash. All. of Tech Workers*, 892 F.3d at 342 (quoting *Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004)). As such, the limitations period for direct challenges to a regulation "starts to run at the time the rule was published." *Koi Nation of N. Cal.*, 2019 WL 250670, at *14 (citing *Wash. All. of Tech Workers*, 892 F.3d at 342). That a party did not become subject to a regulatory scheme until a later date does not, on its own, restart the statute of limitations clock for such challenges. *See Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012) (right of action to bring facial challenges to a regulation governing licensed firearms dealers accrued on the promulgation date and not the date the plaintiff received a license). And, as discussed below in Section III(B), Plaintiffs' claims are not saved by the narrow exception to the statute of limitations when an agency "applies" a rule to them. Thus, Plaintiffs have not demonstrated that the presence of these member farms permits NCAE to challenge a regulation outside of the six-year limitations period established by § 2401(a).

11

listed particular dispersants. *Id.* at 99–100. The plaintiffs sued, challenging the agency's decision not to list the relevant quantities and waters. *Id.* at 100–01.

The court dismissed the plaintiffs' claims as time-barred, concluding that, "notwithstanding plaintiffs' insistence," they challenged the underlying regulation, where EPA had "spelled out" its "deliberate decision" not to identify the waters and quantities. *Id.* at 104. The court also held that "EPA's periodic publication of the . . . [s]chedule . . . and listing of particular products [does] not restart the limitations period for challenging the agency's decision not to identify the waters and quantities in which listed products may be used." *Id.* at 105. In fact, the court reasoned, "EPA's actions in the past six years have 'simply implemented' the decision made and spelled out long ago regarding the pre-specification of waters and quantities; that EPA continues to publish the schedule and list products but not pre-specify waters and quantities only shows the agency's continued adherence to its earlier decision." *Id.* (quoting *Harris*, 353 F.3d at 1011.

So too here. Although Plaintiffs purport to question the Department's statutory authority to issue the 2019 AEWR Notice, the agency actions they challenge are in fact the Department's "deliberate decision[s]" that it "spelled out" in the 2010 Rule. *Id.* at 104. The Department's annual AEWR notices, like EPA's periodically published schedules, do not restart the limitations period for challenging these decisions; the notices simply implement the decisions it made "long ago" and reflect the Department's continued adherence to them.[6] *Id.* at 105.

---

[6] At the hearing on their motion, Plaintiffs asserted for the first time that the annual AEWR notices represented a "recurring violation" of the law, which the Court construes as an invocation of the "continuing violation" doctrine. Hrg. Rough Tr. at 11:15–11:23; *see Earle v. District of Columbia*, 707 F.3d 299, 306–07 (D.C. Cir. 2012). The Court will not consider this argument because it was raised for the first time at oral argument. *See Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14, 28 n.6 (D.D.C. 2014). And even if this argument had been raised in

## B. The 2019 AEWR Notice Does Not "Apply" the 2010 Rule to Plaintiffs Such That They May Invoke the Narrow Exception to the Statute of Limitations

Plaintiffs also argue that even if the limitations period to bring their claims has expired, they fall under "an implicit and narrow exception to the bar on judicial review for claims that [an] agency exceeded the scope of its delegated authority or violated a clear statutory mandate." Pls.' Reply at 2–3 (quoting *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996)). The D.C. Circuit recognizes such an exception, but subjects it to important limitations. "Where Congress imposes a statute of limitations on challenges to a regulation, running from a regulation's issuance, facial challenges to the rule . . . are barred." *Weaver v. Fed. Motor Carrier Safety Admin.*, 744 F.3d 142, 145 (D.C. Cir. 2014). "But when an agency seeks to apply the rule, those affected may challenge that application on the grounds that it 'conflicts with the statute from

---

Plaintiffs' briefs, it would not render their claims timely. Numerous district courts in this Circuit have held that the continuing violations doctrine does not apply where, as here, the statute of limitations is jurisdictional. *See W. Va. Highlands Conservancy*, 540 F. Supp. 2d at 138 (holding that, because § 2401(a) was jurisdictional, it acts as an "absolute bar [that cannot] be overcome by . . . the continuing violations doctrine"); *see also Burt Lake Band of Ottawa and Chippewa Indians v. Zinke*, 304 F. Supp. 3d 70, 76 (D.D.C. 2018); *Alaska Cmty. Action on Toxics*, 943 F. Supp. 2d at 106–09; *but see Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30, 44–46 (D.D.C. 2013) (holding that the continuing violation doctrine may apply even where the statute of limitations is jurisdictional). But even assuming that the doctrine could apply to claims subject to a jurisdictional bar, it would be irrelevant here. "For statute of limitations purposes, a continuing violation is 'one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period,' typically because it is only its cumulative impact . . . that reveals its illegality." *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997) (internal citations omitted) (quoting *Dasgupta v. Univ. of Wisc. Bd. of Regents*, 121 F.3d 1138, 1140 (7th Cir. 1997)). Plaintiffs' allegation that the Department overstepped its statutory authority by imposing AEWRs without finding an adverse effect is not "the sort of conduct" that would be viewed as a continuing violation, since its "illegality . . . would be immediately apparent." *AKM LLC dba Volks Constructors v. Sec'y of Labor*, 675 F.3d 752, 757 (D.C. Cir. 2012). And while the Circuit has "occasionally recognized a second application of the continuing violation doctrine" if an agency fails to meet its continuing legal obligations, that form of the doctrine applies only "if the text of the pertinent law imposes a continuing obligation to act or refrain from acting." *Earle*, 707 F.3d at 307. "Whether an obligation is continuing is a question of statutory construction." *Id.* Here, Plaintiffs have not identified any statutory text that imposes a continuing obligation that the Department failed to satisfy.

13

which its authority derives.'" *Id.* (quoting *Nat'l Air Transp. Ass'n v. McArtor*, 866 F.2d 483, 487 (D.C. Cir. 1989)).

The D.C. Circuit's recognition of this exception dates back, at least, to *Functional Music, Inc. v. FCC*—a 1958 case holding that a "statutory time limit restricting judicial review of [an agency] action is applicable only to cut off review directly from the order promulgating a rule," but "[i]t does not foreclose subsequent examination of a rule where properly brought before [the] court for review of further [agency] action applying it." 274 F.2d 543, 546 (D.C. Cir. 1958). Since *Functional Music*, the Circuit has not precisely defined what constitutes an "application" of a regulation for purposes of this exception, but it has provided some guidance. In *Cellular Telecommunications & Internet Association v. FCC*, the Circuit described the exception as permitting it to "entertain challenges beyond a statutory time limit to the authority of an agency to promulgate a regulation . . . following *enforcement* of the disputed regulation." 330 F.3d 502, 508 (D.C. Cir. 2003) (emphasis added); *see also NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 195 (D.C. Cir. 1987) (noting that "[a] challenge of this sort might be raised, for example, by way of defense in an enforcement proceeding").

In *Weaver*, however, the D.C. Circuit clarified that the circumstances under which the exception applies are "not limited to formal 'enforcement actions.'" 744 F.3d at 145. There, the Circuit held that a plaintiff could directly challenge a regulation under this exception after an agency denied his request to have a citation that had been issued to him removed from an online database. *Id.* at 144. The court then listed examples the Circuit had previously considered "the sort of 'application' that opens a rule to such challenge"—"an order imposing certain limitations on a broadcast licensee, . . . an order rejecting challenges to auction procedures to which a bidder objected, . . . an order dismissing a complaint based on the FCC's tariff-filing requirements,

14

[and] . . . an order denying a mineral lessee's claim to certain royalty reimbursements." *Id.* at 145–46 (internal citations omitted) (reviewing D.C. Circuit cases).

Since *Weaver*, the D.C. Circuit has recognized this exception in two additional cases presenting similar "applications." In *Citizens for Responsibility & Ethics in Washington v. FEC*, it considered a plaintiff's facial challenge to a regulation outside the limitations period because the FEC "rel[ied] on the challenged regulation to dismiss [the plaintiff's administrative] complaint and to deny [the plaintiff's] statutory right to information." 904 F.3d 1014, 1018 (D.C. Cir. 2018). Likewise, in *Genuine Parts Co. v. EPA*, the Circuit considered, under this "narrow exception to the statutory time limit," an untimely challenge to a regulation after the plaintiff raised a timely challenge to EPA's determination that its property was a hazardous waste site. 890 F.3d 304, 315–16 (D.C. Cir. 2018).

While most of the above caselaw describes "the sort of application" that *permits* untimely challenges to a rule, *Weaver* 744 F.3d at 145, the D.C. Circuit also determined that an agency action failed to meet this standard in a case somewhat similar to the one here. In *Edison Electric Institute v. Interstate Commerce Commission,* 969 F.2d 1221 (D.C. Cir. 1992), railroads challenged a 1989 agency decision to incorporate a "productivity adjustment" into a cost index measurement, which the agency used to set maximum shipping rates that a railroad could charge without being subject to an administrative challenge. *Id.* at 1223–24. In raising a timely claim against that decision, the railroads also sought to challenge a 1986 agency decision—the *Yoyo* rule—that required them to roll back their rates when the cost index measurement dropped significantly. *Id.* at 1228–29. Citing *NLRB Union*, the railroads argued that because the *Yoyo* rule was "applied to them in the later productivity decision," they could challenge it "on the ground that it exceeds the agency's statutory authority." *Id.* at 1229.

15

The Circuit disagreed, holding that the 1989 decision did not permit the railroads to invoke the exception—which, it noted, "suggests that a party may challenge an agency's statutory authority whenever the agency applies a rule against it." *Id.* Notwithstanding the railroads' argument that the *Yoyo* rule was "in some sense" applied to them through the agency's later decision, the Circuit concluded that "[i]n adding a productivity adjustment to the *Yoyo* rule, the ICC did not apply the *Yoyo* rule to any particular carrier nor extend it to any new circumstance." *Id.*

Applying the above precedent, the Court cannot conclude that Plaintiffs have met their burden to establish that the 2019 AEWR Notice—to the extent it is even *is* an "application" of the 2010 Rule—is "the sort of application" that allows them to invoke this narrow exception to the statute of limitations.

First, the Court's conclusion is supported by *Weaver*. In that case, the Circuit clarified that, for purposes of the exception, "applications" are not limited to "formal enforcement actions." *Weaver*, 744 F.3d at 145 (internal quotations omitted). But it also advised, at least by implication, that the term does not include every type of agency action. By using the phrase "*the sort of 'application' that opens a rule to such challenge*," it suggested that the exception does not extend to every situation in which a regulation affects a party, or even every situation in which, at least arguably, the regulation has been "applied" in some sense. *Id.* (emphasis added). The Circuit then listed "the sort[s]" of applications that it had held did so. *Id.* In every example, the agency applied the challenged regulation through an order or other agency action directed at a particular party, its property, or a set of circumstances specifically affecting that party. As far as the Court can tell, district courts in this Circuit have permitted this exception to be invoked only

16

in similar circumstances.[7]  And unfortunately for Plaintiffs, the 2019 AEWR Notice simply does not fit the description of agency "applications" under these cases.  It did not, for example, adjudicate a complaint or petition submitted by Plaintiffs or apply the 2010 Rule such a way that affected Plaintiffs in particular.

Second, *Edison Electric* further suggests that the 2019 AEWR Notice was not an "application" of the 2010 Rule such that an otherwise time-barred challenge to it is permitted under the exception.  Although it is not precisely clear how the 1989 decision "applied" the earlier *Yoyo* rule in that case, the Circuit's analysis did not turn on the relationship between the two agency actions.  Instead, the court held that the 1989 decision, while perhaps affecting the *Yoyo* rule's impact on the railroads' profits, did not apply it "to any particular [party] nor extend it to any new circumstances."  969 F.2d at 1229.  And in contrast, the "sorts of applications" set forth in *Weaver* had done precisely that.  Here, the 2019 AEWR Notice did not apply the 2010 Rule to any particular party nor extend it to any new circumstances.  Rather, it simply updated the annual wage rates applicable to all H-2A employers in accordance with the methodology set in 2010.  To be sure, Plaintiffs, like all H-2A employers, are subject to the new AEWRs, just as

---

[7] *See, e.g., Koi Nation of N. Cal.*, 2019 WL 250670, at *1, 14–17 (permitting untimely facial claims against a regulation after the agency denied an Indian tribe's eligibility to engage in commercial gaming on certain land); *Styrene Info. & Research Ctr., Inc. v. Sebelius*, 944 F. Supp. 2d 71, 78–79 (D.D.C. 2013) (permitting untimely facial claims brought by an association of styrene manufacturers after the agency designated styrene as a regulated carcinogenic substance for the first time); *Tripoli Rocketry Ass'n, Inc. v. U.S. Bureau of Alcohol, Tobacco and Firearms*, No. 00-cv-273 (RBW), 2002 WL 33253171, at *5 (D.D.C. June 24, 2002) (permitting untimely facial challenges where the agency issued letters to plaintiffs that "for the first time indicated its intent to apply its regulation[s] . . . to plaintiffs"); *Alaska Leg. Council v. Babbitt*, 15 F. Supp. 2d 19, 24–25 (D.D.C. 1998) (rejecting a facial challenge to a regulation because the plaintiffs "failed to identify a final agency action involving themselves—such as an enforcement action against a named plaintiff" (internal quotations omitted)).

all railroads were subject to both the *Yoyo* rule and the subsequent 1989 decision. But that fact alone does not an "application" make.

Therefore, because Plaintiffs have not established that the 2019 AEWR Notice is an "application" of the 2010 Rule for purposes of this exception, their claims, which are entirely facial, must be dismissed because they are barred by § 2401(a).[8]

The Court's conclusion is guided by several additional considerations. The D.C. Circuit has expressly described the exception as a "narrow" one. *Genuine Parts,* 890 F.3d at 315. But if it applies here, the Court would be hard-pressed to describe its limitations. Moreover, where the statute of limitations at issue is jurisdictional, the Court must start with a presumption that this "narrow" exception does not apply. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that because federal courts have limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction"). Similarly, any waiver of the government's sovereign immunity must be "strictly construed." *Spannaus*, 824 F.2d at 55. Finally, in the Court's view, applying the exception here would effectively nullify the six-year statute of limitations under § 2401(a). If the 2019 AEWR Notice were sufficient to invoke it, any H-2A employer could challenge the 2010 Rule at any time. And regulations establishing other similar regimes would also be exposed to never-ending facial challenges from those subject to them.

---

[8] As described above, Plaintiffs' claims are wholly facial. They assert that AEWRs established according to the 2010 Rule's methodology are unlawful in all circumstances, not just in a particular case. And, if successful, their claims would invalidate the AEWRs effective in 2018, as well as in all previous years they were established under the 2010 Rule. Plaintiffs also seek to enjoin all implementation and enforcement of the 2019 AEWRs, rather than their application to a specific party or region. In response, Plaintiffs argue that they assert an "as applied" challenge to the 2019 AEWR Notice because it generated a "feedback loop" that "ratchet[s] up U.S. farmworker wages, year after year." Pls.' Reply at 5–6. But this assertion, whatever its truth, does not transform their claims into "as-applied" challenges.

For that reason, allowing the exception to be invoked here would "frustrate Congress's objective that facial challenges to a regulation be confined to a limited period." *Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 663 (D.C. Cir. 2014).

Finally, the Court notes that although Plaintiffs' claims are not timely, Plaintiffs are not necessarily without a remedy. The law in this Circuit recognizes "[t]he general rule is that it is a perfectly valid 'method of obtaining judicial review of agency regulations once the limitations period has run . . . to petition the agency for amendment or rescission of the regulations and then to appeal the agency's decision." *Am. Rd. & Transp. Builders Ass'n v. EPA*, 588 F.3d 1109, 1112 (D.C. Cir. 2009) (quoting *NLRB Union*, 834 F.2d at 196); *see also Pub. Citizen*, 901 F.2d at 152. But this case does not present such an appeal.

## IV. Conclusion

As explained above, Plaintiffs' claims are time-barred under § 2401(a). Therefore, in a separate order, the Court will dismiss this case for lack of subject-matter jurisdiction.

s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 18, 2019